## Marlowe v. Commonwealth.

(Decided Feb. 7, 1911.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. County Courts—Care of Dependent Children.—The statute making provision for the care, protection, and correction of dependent and delinquent children, and giving judges of county courts jurisdiction over cases arising thereunder, does not create a new court but merely enlarges the powers of the county courts.

2. Appeals.—Where a legislative act deals fully with a subject, as to rights, remedies and mode of procedure, and fails to provide for an appeal, none will lie.

3. Same.—Nor is ground of complaint afforded thereby, for the right of appeal is purely statutory.

4. Proceedings.—The correction and restraint imposed upon a wayward child in an effort to better its condition and improve its habits and morals, so as to fit it for good citizenship, is not a punishment, but rather a protection; and the proceedings looking to this end are not criminal in their nature.

5. Jury Trial.—No constitutional right is denied a delinquent child by refusing him a jury trial, for the reason that the proceeding is not criminal.

6.    Juvenile Courts.—Should the powers conferred by the juvenile
court act upon the county judge be exceeded by him, relief may
be had by the aggrieved party through the writ of habeas corpus.

McDONALD & McMAHAN for appellant.

KINNEY & THOMAS, BERNARD FLEXNER, JAMES BREATH-
ITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney
General, for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This appeal calls in question the validity of section
331-E, Kentucky Statutes, commonly known as the
"Juvenile Court Act," or that provision of the statutes
conferring upon county courts the power and authority
to make suitable provision for the care and custody of
neglected, dependent and delinquent children. The ques-
tion arose in this way. On May 2, 1910, a petition was
filed with the judge of Jefferson county court against
Ethel May Marlowe, charging her with being a delin-
quent. Process was issued and she was brought before
the court on May 6th for trial. Upon a hearing judgment
was rendered by the county judge, committing her to the
home and reformatory conducted by the Sisters of the
Good Shepherd in the city of Louisville until she was
twenty-one years of age, or until further order of the
court. Immediately thereafter a petition for a writ of
habeas corpus was filed before one of the judges of the
Jefferson circuit court, and on the hearing of the writ
the response of the Sisters of the Good Shepherd was ad-
judged sufficient, and appellant was remanded to the cus-
tody of that institution. Thereafter she caused to be
filed a copy of the judgment of the county court in the
circuit court, and executed a supersedeas bond, and
prayed an appeal to the criminal branch of the Jefferson
circuit court. A supersedeas was executed on the Sisters
of the Good Shepherd and the release of the appellant
demanded, which was refused by the Sisters upon the
advice of counsel, for the reason that the Jefferson cir-
cuit court did not have jurisdiction to entertain an ap-
peal from the county court in cases of this character.
Thereupon the Commonwealth's attorney for Jefferson
county entered a motion to dismiss the appeal and quash
the supersedeas bond, and, upon hearing, these motions
were sustained, the judge of the criminal division of the
Jefferson circuit court being of the opinion that the right
of appeal did not exist. Accordingly, the appeal was dis-

missed and the supersedeas bond quashed. From that order and judgment this appeal is prosecuted.

Three grounds are relied upon for reversal. First, that the creation of a juvenile court is not authorized by the Constitution. Second, the judgment of the court being for the confinement of the delinquent for an indeterminate period, or until she reached her majority, is the imposition of such punishment as clearly authorizes an appeal under the code regulating criminal practice. And third, it is contended that the act is unconstitutional in that it denies to the delinquent the right of trial by jury.

Does the act in fact create a new court, or does it merely confer additional powers upon the county court?

Section 51 of the Constitution provides, that:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The title to the act reads as follows:

"An act relating to children who are now or may hereafter become dependent, neglected or delinquent, to define these terms, and fixing and defining powers of the several county courts within this Commonwealth with reference to the care, treatment and control of such children, and to provide for the means whereby such powers may be exercised."

Clearly, it was not the intention of the Legislature to create a new court if the title conforms to the constitutional requirement. From a careful reading of the act itself, it is apparent that no new court has been created, but that the powers conferred upon the county court by this act have the effect merely of extending or enlarging its jurisdiction.

Under the act children are divided into two classes, dependent and delinquent. A dependent or neglected child is one whose condition, due to some act of commission or omission on the part of its parents or those whose duty it is to exercise control over it, is such as make it necessary, for the benefit of the child and the good of society, to remove it from its surroundings. A delinquent child is one who, because of some act of commission or omission on its part, becomes unmanageable or ungovernable, or is found to be leading an immoral or vic-

ious life, so as to require, for its good and possible reformation, that it be taken into custody and surrounded by proper moral training and influences, to make of it, if possible, a good and respectable citizen.

Section two of the act provides that the county courts of the several counties in the State shall have jurisdiction of cases arising under the provisions of the act, and that each of said courts shall keep a docket, which shall be known as the juvenile docket, and when such court sits for the trial of cases arising under the act it shall be called the juvenile session of the county court. In section four of the act it is provided that any reputable person may file a verified petition in the county court against a neglected or delinquent child and cause process to be issued and served upon the parent or person having it in charge, and that then a trial shall be had in accordance with the provisions of the act. Section 7 authorizes the county court to commit such child to any institution in the county which is established for the care of children. And section 12 provides that, after judgment has been entered, the court may at any time thereafter, for cause shown, change, modify, or set aside the order. In other words, although the child is placed in the care and custody of some one of the institutions in the county provided for the care of children, the court never loses control over the custody of the child, and may at any time make an order modifying its former judgment to such extent as the necessities of the case and the good of the child require. The imposition of these duties and the conferring of this jurisdiction upon the county courts is merely an enlargement of the powers of such courts; this is clearly authorized by section 141 of the Constitution, which provides that the jurisdiction of the county courts shall be uniform throughout the State and shall be regulated by general law, and, until changed, be the same as then vested in the county courts of the State by law. This section gives to the legislative department of the government the broadest latitude in fixing and defining the jurisdiction of the county courts. Acting under this constitutional authority, the Legislature has, in section 1057, Kentucky Statutes, fixed the jurisdiction of the county courts, as follows:

"The county court shall have jurisdiction to probate wills, appoint and remove personal representatives, guardians, trustees, committees, curators and other fiduciaries, to grant tavern, drug and liquor licenses, and

such other jurisdiction as may be conferred upon it by law."

The Juvenile Court Act is simply an "other jurisdiction" authorized by section 1057, of the Kentucky Statutes, which is drawn in conformity with section 141 of the Constitution. Prior to the enactment of the Juvenile Court law, the jurisdiction which is now exercised by the county court over dependent and delinquent children was exercised by the magistrates throughout the State, and was authorized by sections 325 to 331, both inclusive, Kentucky Statutes. In the city of Louisville it was exercised by the judge of the police court and the board of children's guardians, as provided by section 2008 to 2014, inclusive, Kentucky Statutes. The effect of the Juvenile Court Act was to confer upon judges of the county courts throughout the Commonwealth the jurisdiction which had theretofore been exercised by the magistrates and police judges.

A similar question arose in the case of Commonwealth v. Fisher, 213 Pa., 48, in which the validity of a Juvenile Court Act, or bill, similar in the main to the one under consideration, was assailed, and it was there contended that the effect of the act was the creation of a new court in violation of the Constitution of that State. There the jurisdiction was conferred upon the court of quarter sessions, a court established by the Constitution, but with powers subject to legislative control, and the court held that, in conferring upon the court of quarter sessions the powers which were given it under the Juvenile Court Act of that State, no new court was created. In disposing of that question, the court said:

"The court of quarter sessions is not simply a criminal court. The Constitution recognizes it, but says nothing as to its jurisdiction. Its existence antedates our colonial times, and by the common law and statutes, both here and in England, it has for generations been a court of broad general police powers in no way connected with its criminal jurisdiction. * * * With its jurisdiction unrestricted by the Constitution, it is for the Legislature to declare what shall be exercised by it as a general police court, and instead of creating a distinctively new court, the act of 1903 does nothing more than confer additional powers upon the old court and clearly define them. * * * It is a mere convenient designation of the court of quarter sessions to call it, when caring for children,

a juvenile court, but no such court, as an independent tribunal, is created. It is still a court of quarter sessions before which the proceedings are conducted, and though that court, in so conducting them, is to be known as the juvenile court, the records are still those of the court of quarter sessions."

No new court has been created by this act, but the powers of the county court have merely been enlarged.

As to the second proposition, that appellant was entitled to prosecute an appeal from the judgment of the county court, committing her to the home of the Good Shepherd, a sufficient answer is found in the statement that the act known as the juvenile court act makes no provision whatever for an appeal, and, as it contains the entire procedure relative to dependent or delinquent children, it must be presumed that the Legislature did not intend that an appeal should lie; otherwise provision would have been made for it. And, indeed, no good reason is assigned or shown why an appeal should be granted, for the judgment is not one of imprisonment, but merely a provision of the government, standing in loco parentis, for the protection, correction and care of the child. Prior to the adoption of the Code in 1854 there was no appeal in criminal cases, and the right of appeal exists in neither civil nor criminal cases except by legislative enactment. The right of appeal not being guaranteed by the Constitution, but wisely left to legislative discretion as to when it should be granted, and when not, no ground of complaint is afforded appellant because provision for an appeal is not found in the act. In Broaddus v. Broaddus, 10 Bush, 299, this court said:

"The General Statutes must be regarded as containing a complete system of laws, and in so far as they treat of any general law, whether under the title of "Wills," "Executors and Administrators," "Husband and Wife," "Guardian and Ward," etc., it must be considered and treated as all the statute law on the subject indicated by the title; and if the system is defective in any of its parts, the remedy is to be found in legislative amendments. This court can not therefore look to the Revised Statutes to supply any defects that may appear in any general law embodied in the General Statutes, except such laws as are expressly left unrepealed by subsections 1, 2, 3 and 4 of section 2, article 1, of the act to adopt the General Statutes."

This same rule has been announced by this court in many decisions, its most recent utterance, perhaps, be-

ing in the case of the Commonwealth v. Adams Express Co., 30 Reporter, 309, in which case it was held that the act known as the Auditor's Agent Act contained the entire law and procedure in proceedings to assess omitted property, and the right to make a motion for a new trial did not exist in such cases because the act did not provide for that right. It was there said:

"This court has held in the case of Taylor v. Tibbatts, 13 B. Mon., 177, that where a will had been admitted to probate in the county court, the court could not thereafter grant a retrial or set aside the order of probate made at a previous term.

"And again, in the case of McCarthy v. McCarthy, 8 Bush, 504, where an order had been entered in the county court admitting to probate a will, and thereafter application was made to vacate the order of probate, and the court, on the hearing of the motion to vacate, entered an order declaring the order probating the will null and void, this court, Judge Pryor delivering the opinion, said:

" 'The only remedy provided for the unsuccesssful party where a will has been rejected or admitted to record by the county court is by writ of error or an appeal to the circuit court of the same county, and thence to the Court of Appeals. The will once admitted to probate by the county court must be contested in the manner pointed out by the statute. This special proceeding is adopted and regulated by law as applicable to wills alone, and the remedies afforded in such cases must be found in the statute, and nowhere else. There is no power given to the county court, after a will has been admitted to record or rejected, to grant the parties a new trial, or, at a subsequent term, to annul the orders made in regard to the case at a previous term.''

''The same rule of reasoning may, by analogy, be applied to the case at bar. The only remedy provided for the unsuccessful party, where the property has been listed by the county judge, or he has refused to list same, is by an appeal to the circuit court, and a judgment by the county court must be contested in the manner pointed out by the statute. This special proceeding is adopted and regulated by law as applicable to the listing of omitted property for taxation, and the remedies afforded in such cases must be found in the statute, and nowhere else. And there being no power given the county judge, after he had entered his judgment refusing to list the property sought to be taxed, to grant to the parties a new trial, the orders which he made in noting

the filing of the motion for a new trial and in overruling the same were void, and of no binding force or effect, and they did not stay proceedings on the judgment."

The Juvenile Court Act is a complete compendium of the law upon this subject, and no provision being made therein for an appeal, the trial judge properly held that no appeal could be prosecuted from the order of the county court. If, in its practical application, the act is found to be incomplete or imperfect, the remedy lies in an appeal to the Legislature for relief in the shape of an amendment authorizing an appeal from the action of the county court. Until such step has been taken, the courts are without power to grant the relief asked.

The next objection raised to the validity of the act is that the proceedings under the act are in their nature criminal, and that the judgment is a judgment of imprisonment, and that, therefore, an appeal, if not authorized by the act itself, belongs as a matter of right to the appellant under section 362 of the Criminal Code.

Section 18 of the act defines the purposes of the act, as follows:

"This act shall be liberally construed to the end that its purpose may be carried out, to-wit, that the child may be cared for as would be done by a court of chancery and that it may be trained and disciplined; that the care, supervision and discipline of the child shall approximate as nearly as may be that which should be given by its parents. The proceedings involving the child shall not be deemed to be criminal proceedings and the child shall not be considered as a criminal, but as a child in need of aid, encouragement and guidance."

The act declares that the proceedings shall not be deemed criminal; if they were in fact such, the declaration to the contrary could not have the effect of changing their nature; but such declaration at least shows the legislative intent. This intent is to protect, rather than to punish the child. Suppose, in making provision for the custody of the unfortunate child, whether dependent or delinquent, instead of having the judgment operate directly upon the child, the act imposed upon the parent or guardian of such the duty, under heavy penalty, of giving it the proper care and custody, and if, in complying with the court's order, the parent would throw around his child such restrictions as are imposed under the judgment of the juvenile court act, could it be said that these acts of the parent or guardian, corrective and pro-

tective in their nature, were the imposition of a punishment, and that the proceedings are criminal in their nature? Assuredly not. The object of the act is to give the court authority, acting for the best interests of the child, to place it in the care and custody of some one capable and willing to do for it that which its natural parents either are unable or unwilling to do. Such an act is in no wise a criminal proceeding; nor can any restraint imposed under the act for such a purpose be regarded as a punishment for a crime.

Appeals to the circuit court are regulated by section 978, Kentucky Statutes, which is as follows:

"Appeals may be taken to the circuit court from all orders and judgments of the fiscal court or quarterly court in civil cases where the value in controversy, exclusive of interest and costs, is over $25, and from all judgments of the county court where the amount in controversy is over $50, exclusive of interest and costs; and from all judgments and orders of said court in cases of bastardy, or in the settlement of the accounts of personal representatives, assignees, guardians, trustees, curators and other fiduciaries, and from orders granting, revoking or refusing letters testamentary or of administration, or appointing or refusing to appoint, or removing curators, guardians, trustees or committees of estates, or granting or refusing to grant druggist, tavern or liquor license, and from judgments in proceedings to condemn land for any purpose, and in all other cases allowed by law."

Section 362 of the Criminal Code, the aid of which is especially invoked by appellant, is as follows:

"If a judgment against a defendant on a trial before a county judge, or in a justice's court, or in a city or police court, unless otherwise provided in statutes creating or regulating it, be for imprisonment or for a fine of twenty dollars or more, he shall have the right of appeal to the circuit court of the county in which the judgment is rendered."

Since the judgment of the juvenile court is in no sense a judgment of imprisonment, it is readily seen that appellant is resting her case upon a false basis. A similar contention was made in a case in Wisconsin, and was passed upon by the supreme court of that State in Milwaukee Industrial School v. Milwaukee County Supervisors, 40 Wis., 328. There the court said:

"In the first place, we can not understand that the detention of the child at one of these schools should be

considered as imprisonment, any more than its detention in the poor house; any more than the detention of any child at any boarding school, standing, for the time, in loco parentis to the child. Parental authority implies restraint, not imprisonment. And every school must necessarily exercise some measure of parental power of restraint over children committed to it. And when the State, as parens patriae, is compelled, by the misfortune of a child, to assume for it parental duty, and to charge itself with its nurture, it is compelled also to assume parental authority over it. This authority must necessarily be delegated to those to whom the State delegates the nurture and education of the child. The State does not, indeed we might say could not, intrude this assumption of authority between parent and child standing in no need of it. It assumes it only upon the destitution and necessity of the child, arising from want or default of parents. And, in exercising a wholesome parental restraint over the child, it can be properly said to imprison the child, no more than the tenderest parent exercising like power of restraint over children. This seems too plain to need authority; but the cases cited for the respondent, and others amply sustain our view."

A like question arose in Idaho Re John Sharp, 15 Idaho, 120, 96 Pac., 563, and was taken to the Supreme Court in an effort to have the child released from the institution in which it had been placed. Three grounds were relied upon: First, that the confinement of the child was violative of the constitutional guaranties applicable to criminal procedure; second, that the act was an improper grant of jurisdiction to the probate court; and third, that the act was unconstitutional because it failed to provide for an appeal. In an elaborate opinion the court, in disposing of these three objections against the contention of the appellant, said:

"The first contention made by petitioner's counsel is that the act of March 2, 1905, entitled "An Act to Provide for the Care of Delinquent Children" is in conflict with and in violation of sections 6-7-13-18 of article 1 of the Constitution, for the reason that it denies the right of trial by jury, speedy and public hearing, process for the attendance of witnesses, the right to appear and defend in person and by counsel, and the right of bail; and that the proceeding is without due process of law. We shall not go into a discussion of this question, or into any extended consideration of the distinction between this act and its purposes and provisions and that of the

general spirit of the criminal law. These questions have all been so extensively, exhaustively and lucidly considered and discussed by so many courts within recent years that we shall content ourselves with a citation of some of the authorities. We may premise our citation of authorities, however, by a general statement that this statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of sixteen from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them from the odium of criminal prosecutions and punishment. Its object is to confer a benefit upon both the child and the community in the way of surrounding the child with better and more elevating influences, and of educating and training him in the direction of good citizenship and thereby saving him to society and adding a good and useful citizen to the community. This, too, is done for the minor at a time when he is not entitled, either by natural law or the laws of the land, to his absolute freedom, but rather at a time when he is subject to the restraint and custody of either a natural guardian or a legally constituted and appointed guardian to whom he owes obedience and subjection. Under this law the State, for the time being, assumes to discharge the parental duty and to direct his custody and assume his restraint." * * * "It is well enough, perhaps, to say here and now that the Constitution grants no absolute right of appeal from an order or judgment of a probate court. * * *

"Counsel for petitioner lays particular stress on the provision of section 13, article 5 or the Constitution, which provides that the Legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a co-ordinate department of the government, but that it shall provide a proper system of appeals, etc. Counsel argues that this section of the Constitution has the effect of granting the right of appeal from judgments and decisions of probate courts, and that the Legislature can not limit or abridge that right. We do not think the framers of the Constitution ever intended, by adopting this section to confer the right of appeal as an absolute and unqualified right. It was rather, as we view the matter, the intent to leave the matter of appeals to the Legislature. The cases and matters in which appeals might be prosecuted, and also the practice and procedure, was left to the

Legislature, and if it should see fit not to provide any method of appeal, or should provide that appeals could not be had in any case from a probate court, the legislative conclusion and decision would be final and conclusive."

Since the right of appeal is purely a matter of legislative discretion, and the Legislature has not seen proper to provide for an 'appeal in cases of this character, and the proceeding is not criminal in its nature, appellant is afforded no ground of complaint because the circuit court dismissed her appeal.

The last objection urged to the act is that it is unconstitutional because it deprives the delinquent or dependent child of its liberty without due process of law, in that no jury trial is provided for. This question has not heretofore been raised in this State, but similar acts have been in force in other states, and this same objection has been made to their validity, and the courts have, with a degree of uniformity, upheld them.

In Ex parte Ah Peen, 51 Cal., 280, in holding that a child committed to an industrial school was not deprived of his liberty without due process of law, the court said:

"This purpose in view is not punishment for offenses done, but reformation and training of the child to habits of industry, with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority. Having been abandoned by his parents, the State, as parens patriae, has succeeded to his control, and stands in loco parentis to him. The restraint imposed upon him by public authority is in its nature and purpose the same which, under other conditions, is habitually imposed by parents, guardians of the person, and others exercising supervision and control over the conduct of those who are, by reason of infancy, lunacy, or otherwise, incapable of proper controlling themselves."

And in Reynolds v. Howe, 51 Conn., 472, where a similar question was presented, the court said:

"But as we have shown, the boy is not proceeded against as a criminal. Nor is confinement in the State Reform School a punishment, nor in any proper sense imprisonment. It is in the nature of a parental restraint. It is a mode of education to usefulness; compulsory, but not for that reason improper; and the restraint is a necessary incident of the compulsory education. It is all made necessary by the corrupting influences that surround and are likely to control the boy, and by the

need of society for protection; and that necessity justifies the proceeding. To make the restraint and instruction of any permanent value they must be continued for a long time. Habits are not changed in a month; not often in a year. This is specially true of bad habits. The attempt to reform viciously inclined boys would be an utter failure if limited to a few months."

The supreme courts of North Dakota, Illinois, Indiana, Maryland, Massachusetts, Georgia, Nebraska, Pennsylvania, Utah, Washington, Florida, Minnesota and Ohio, have upheld the validity of acts having for their main object the purposes set out in the act under consideration. All these opinions are rested upon the theory that the proceedings are not criminal, but merely the services of the government called into play for the purpose of protecting, training and correcting a class of children, who, through misfortune or lack of parental guidance and care, are unable or unwilling to care for themselves.

The act under consideration, when properly administered, is calculated to enable the county judges throughout the State to render to the dependent and delinquent boys and girls coming within their respective jurisdictions a most valuable service by removing them from all influences and associates to well-conducted, Christian homes, where they may be cared for and trained and, as far as possible, fitted for the high and important responsibilities of citizenship. Of course, if not properly administered, this law, intended as a shield to the unfortunate and fallen, might be turned into an instrument of oppression; and while in such cases no appeal would lie, ample relief could be obtained by the aggrieved party through habeas corpus proceedings, where the county judge exceeds his powers under the act.

We are of opinion that the act violates no right guaranteed to the appellant by the Constitution, and the judgment is therefore affirmed.