STATE OF CONNECTICUT v. FRANCES MATTIELLO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 1-20111

Argued July 18—decided November 10, 1966

56

*Robert N. Grosby,* public defender, for the appellant (defendant).

*George F. Carroll, Jr.,* prosecuting attorney, for the appellee (state).

KOSICKI, J. No finding or transcript of evidence has been filed by the defendant, nor is the appeal directed toward the finding of guilty on the second count, on which the defendant was committed to the Connecticut state farm for women concurrently with the commitment on the first count. The slim record before us yields little information on the factual background which of necessity we must consider in deciding the questions of law raised by the demurrer to the first count. After a full trial on the facts, we cannot pass on the court's ruling on the demurrer as a disembodied proposition of law.

With such meager facts as we can glean from the record, the following appears to be admitted or undisputed. The defendant was arrested in Norwalk on March 17, 1966, on the charge of being in manifest danger of falling into vice. General Statutes § 17-379.[1] At that time, she was within one month of reaching her eighteenth birthday. On March 25,

---

[1] "Sec. 17-379. COMMITMENT OF GIRLS OVER SIXTEEN. Any unmarried female between the ages of sixteen and twenty-one years who is in manifest danger of falling into habits of vice, or who is leading a vicious life, or who has committed any crime, may, upon the complaint of the prosecuting attorney of the circuit court, be brought before said court for the circuit within whose jurisdiction

she was presented in court on the count referred to and advised of her rights. A guardian ad litem and a public defender were appointed by the court. On April 15, a substitute information was filed in which the defendant was charged with two additional counts, the second being an allegation of lascivious carriage in violation of § 53-219, and the third, disorderly conduct in violation of § 53-175. On the same day, the public defender filed a demurrer to the allegation appearing as the first count, claiming that § 17-379 was unconstitutional on its face in that it violates the fourteenth amendment to the constitution of the United States (1) by discriminating against certain persons without basis and thereby denying these persons equal protection under the law, and (2) because it purports to define a crime in language which is too vague and uncertain in its meaning to give adequate warning of the conduct proscribed or to guide courts in a fair administration of the law, thereby depriving the defendant of due process. On May 13, the demurrer was overruled after a hearing, and a memorandum of decision was filed. Thereupon, the defendant pleaded not guilty to the first count. For some reason, not apparent on the record, the plea of not guilty to the remaining two counts was entered on June 3 and the case continued for trial to June 10. After trial, on the same day, judgment of guilty was rendered on the first two counts and not guilty on the third count. The court then committed the defendant concurrently on the first two counts to the Connecticut state farm for women, and a mittimus was issued accordingly.

she resides or is found, and, upon conviction thereof, may be committed, until she has arrived at the age of twenty-one years, to the custody of any institution, except Long Lane School, chartered by the general assembly or incorporated under the general laws for the purpose of receiving and caring for females who have fallen into or are in danger of falling into vicious habits."

Only one error is assigned on this appeal, and that is the court's overruling of the demurrer. "The constitutionality of a statute upon which a criminal prosecution is based can be raised by demurrer. . . . The accused may plead over after a demurrer has been overruled. . . . [She] does not thereby waive the right to have the ruling upon demurrer reviewed on appeal." *State* v. *Sul,* 146 Conn. 78, 80. "Upon the overruling of . . . [her] demurrer, the defendant could have refused to plead over, let judgment enter, appealed from the judgment and raised the questions of law which . . . [she] now presents. Instead, . . . [she] has appealed from the judgment entered after trial, but . . . [she] assigns no error in the trial. Where there has been a trial on the merits, this court should have the opportunity of reviewing the questions of constitutionality upon the facts established at the trial." Id., 83. It was also strongly suggested in the cited case that if it had not involved a criminal prosecution under a statute defining a serious crime and imposing a substantial penalty, the defendant in that case would have been precluded from pursuing on his appeal any error claimed in the overruling of his demurrer. Ibid.

The rules stated in the *Sul* case, supra, with meticulous precision and particularity were ignored by the defendant in the case before us, but we do not rest our decision on that ground alone. The exact question presented on the merits has been overlooked by the defendant except for one sentence in the closing paragraphs of her brief: "There is no crime of being vicious or of falling into vice." Both parties appear to agree on this crucial point, and the applicable law thereon appears to be well settled in Connecticut.

Turning our attention to the merits of the appeal, we "cannot impute to the Legislature an intent to

pass an unconstitutional statute and a law should be construed, if it can reasonably be done, so as to make it valid." *State* v. *Muolo,* 119 Conn. 323, 330. A statute will not be held void for uncertainty if a practicable or sensible effect may be given to it. *State* v. *Zazzaro,* 128 Conn. 160, 165. The rule of strict construction does not allow the avoidance of the clear import of the law through some mere technicality in disregard of context and in frustration of the obvious legislative intent. *State* v. *Faro,* 118 Conn. 267, 274.

It should be noted at the outset that title 17 of the General Statutes is devoted to a wide variety of sociological problems and legislative policy and methods for their correction and solution. It is entitled "Humane and Reformatory Agencies and Institutions." The aims and purposes of this legislation are unequivocal, clear, and unquestionably within the powers of legislature to achieve by law. They are, generally, to preserve and increase the benefits to an orderly society deriving from the care, protection and welfare of the individuals who, because of lack of physical, mental or moral resources or discipline, are especially in need of salutary aid and earnest concern on the part of the general public. Section 17-379 is incorporated in chapter 309, "Reformatory Institutions," which is a component part of title 17, part III, "Miscellaneous Agencies." As we shall develop later, it is not a penal statute. Constituting the remainder of chapter 309 are part I, "The Connecticut State Farm for Women"; II, "Long Lane School"; IV, "Connecticut Reformatory"; V, "Connecticut School for Boys"; and VI, "General Provisions." The next succeeding and separate portion of the General Statutes, title 18, is denominated "Penal Institutions" and deals with state prisons and jails.

In *Reynolds* v. *Howe,* 51 Conn. 472, the plaintiff, father of a minor son eleven years of age, made application for a writ of habeas corpus, alleging unlawful confinement of his son in the state reform school at Meriden. The son had been confined on a mittimus issued by a justice of the peace on complaint of a grand juror that the boy was in danger of being brought up, and was in fact being brought up, to lead an idle and vicious life. The proceedings were brought under a statute providing that "justices of the peace shall have power to commit to the reform school . . . any boy under sixteen years of age . . . who is in danger of being brought up, or is brought up, to lead an idle or vicious life." Public Acts 1881, c. 119 § 1. The trial court rendered judgment for the defendant in the habeas corpus action. Objection had been made to the constitutionality of the act on various grounds, inter alia, that the right of appeal and the right to a jury trial were not allowed, that the proceeding was a criminal prosecution, that no provision was made for a hearing, and that there was no adequate definition of the word "vicious." In affirming the judgment, our Supreme Court said (pp. 476-78): "It is manifest that this statute, so far as we have quoted it, creates no crime and does not treat the condition of the boy as anything for which he is in fault. It found its origin in the social necessity of saving boys from impending ruin and the community from the prevalence of crime. It is of the same nature with statutes which authorize the compulsory education of children, . . . the appointment of . . . conservators to take charge of the property of those who are incapable of managing their own affairs, the confinement of the insane, and the like. The welfare of society requires and justifies such enactments. . . . [A]s we have shown, the boy is not proceeded against as a criminal. Nor is confine-

ment in the State Reform School a punishment, nor in any proper sense imprisonment. It is in the nature of a parental restraint. . . . Statutes like this have been in existence for the past two hundred years, and it is very late to call their constitutionality in question."

The same reasoning is reiterated, and a like result reached, in *Cinque* v. *Boyd,* 99 Conn. 70. The case arose out of a habeas corpus proceeding to procure the release of a minor, fourteen years old, who had been committed to the Connecticut School for Boys in Meriden by the Juvenile Court of the city of New Haven. The final question propounded by the reservation to our Supreme Court was answered by advising that the writ of habeas corpus be dismissed. The court said (p. 80) : "The law is attacked in this case largely upon constitutional grounds, and in some other respects as being invalid by obscurity and insensibility to an extent rendering its full enforcement impossible. The constitutional objections turn upon whether the Act is one for the punishment of crime, and therefore subject in its form and in the manner of its administration to the constitutional guarantees in various particulars contained in the Bill of Rights, or whether it is concerned with the care and protection which every State as *parens patriae* in some measure affords to all inhabitants who from personal deficiencies or incapacities or conditions of life are in some degree abnormal, and hence in its scope, intent and method of administration is entirely of a civil nature." And the court, after citing cases in many jurisdictions upholding the principle that inquiries conducted by juvenile courts are not criminal trials, quotes with approval (p. 85) from *Commonwealth* v. *Fisher,* 213 Pa. 48, 53 : "To save a child from becoming a criminal, or from continuing in a career of crime, to end in maturer years in public punishment and dis-

grace, the legislature surely may provide for the salvation of such a child, if its parents or guardian be unable or unwilling to do so, by bringing it into one of the courts of the state without any process at all, for the purpose of subjecting it to the state's guardianship and protection." See such cases as *Ex parte Januszewski,* 196 Fed. 123, 126; *Wissenburg* v. *Bradley,* 209 Iowa 813, 816; *Marlowe* v. *Commonwealth,* 142 Ky. 106, 117; *In re Perham,* 104 N.H. 276; *Weber* v. *Doust,* 84 Wash. 330, 332; s.c., 81 Wash. 668, 672.

Although many of those cases deal with juveniles, according to the age limits defined by state law, the conclusion is inescapable that § 17-379, read within the context of the statutes in title 17, is not one that imposes a penalty for a crime but rather acts as a protective safeguard for the purpose of providing custody, care and training for females, between the ages of sixteen and twenty-one, who may be in manifest danger of falling into habits of vice, or who may be leading a vicious life, or who may have committed any crime.

What we have already said makes it unnecessary to discuss further the claim made by the defendant of vagueness or uncertainty in the use in the statute of the words "vice " and "vicious."

There is no error.

In this opinion PRUYN and DEARINGTON, Js., concurred.