David William SMITH, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 3, 1967.

David W. Smith, Jr., pro se.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Judge.

David William Smith, Jr., appeals from the order denying his RCr 11.42 motion to vacate the sentence for which he is now incarcerated in the penitentiary. The trial court afforded an evidentiary hearing, after which the relief sought was denied. The bases for appeal are: (1) that appellant was deprived of due process by the failure of the juvenile court to afford him counsel, and (2) ineffective court-appointed counsel in the circuit court trial.

On April 9th or 10th, 1958, appellant committed armed robbery in Pike County. At that time appellant was 17 years old; he was then a member of the U.S. Navy and absent without leave from his naval duty. Appellant was arrested in West Virginia (his home state) on April 13, 1958. He waived extradition and was returned to Kentucky and incarcerated in the Pike County jail. On April 28, 1958, a hearing was had before the judge of the Pike County Court, sitting as a juvenile court pursuant to KRS Chapter 208. The following order was entered by the juvenile court on that occasion:

"PIKE COUNTY JUVENILE COURT
April 28, 1958

Commonwealth of Kentucky      Plaintiff

vs.      Order

David William Smith, Jr.      Defendant

A hearing in the above-styled action having been set down for hearing on April 21, 1958, and the accused, David William Smith, Jr., being present in court with his parents, Mr. and Mrs. David William Smith, Sr., and the court having heard witnesses for the Commonwealth, and being sufficiently advised under the provisions of KRS 208.140 as amended, this case is hereby ordered to the Pike Circuit Court Grand Jury for proper action.

/s/ Ervin S. Pruitt, Judge"

On June 3, 1598, the Pike County Grand Jury indicted appellant upon the charge of armed robbery. He was brought before the court on June 9, 1958, at which time counsel was appointed for him by the circuit court judge. The order reciting the appointment of counsel reflects that appellant waived formal arraignment and entered a plea of guilty. The case was passed until the next day for submission to a jury for fixing sentence. The jury fixed sentence at imprisonment for life.

Was appellant entitled to counsel in the juvenile court? Was the failure to appoint counsel for him there of such serious consequence as to vitiate the juvenile court's

waiver of its jurisdiction? What effect did the failure to appoint counsel in the juvenile court have upon the validity of the conviction and consequent sentence in the circuit court? All of these are searching and vexing questions which are squarely presented in this appeal.

As early as 1911, when the first juvenile court legislation in Kentucky appeared for testing before this court, it was written that proceedings looking toward the rehabilitation of a juvenile were not criminal proceedings. See Marlow v. Commonwealth, 142 Ky. 106, 133 S.W. 1137. That landmark case stated with approval the underlying principle supporting juvenile courts as agencies for rehabilitation of minors by use of this language:

"The purpose in view is not punishment for offenses done, but reformation and training of the child to habits of industry, with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority. Having been abandoned by his parents, the state, as parens patriae, has succeeded to his control, and stands in loco parentis to him."

See 133 S.W. at page 1141. Text writers in this field have continued to recognize that precept as warranting juvenile courts in the exercise of a benign, paternalistic supervision over juveniles. This may be sound as it relates to rehabilitation efforts for delinquent juveniles but that is not the situation at bar. Here we deal with the effect of the Juvenile Court's relinquishing the delinquent for processing as an adult.

An annotation on the question of the right to counsel in juvenile court proceedings appears in 60 A.L.R.2d 691, et seq. The case preceding the annotation is the much discussed Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686, in which it was held that a juvenile was entitled to counsel even in a delinquency proceeding looking only toward his commitment to training school. We need not decide whether that decision will be followed in delinquency proceedings in this jurisdiction. The interested reader should consult 45 Ky. Law Journal 532–537 for comment upon right to counsel in juvenile court proceedings.

The most recent pronouncement upon the matter before us is found in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84. In Kent the juvenile had an attorney, but the juvenile court did not rule on certain motions made by the attorney. The juvenile court waived jurisdiction of Kent, who was then indicted and convicted of felonies; he was sentenced to imprisonment for indeterminate terms ranging from 30 to 90 years. The juvenile court did not conduct a hearing relating to the question whether its jurisdiction of Kent should be waived. In the course of the opinion delivered in Kent by Mr. Justice Fortas, it was written:

"We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does. not." Id., 86 S.Ct. at p. 1053, 16 L.Ed. 2d at p. 93.

In the same opinion it is said:

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." Id., 86 S.Ct. at p. 1055, 16 L.Ed.2d at p. 94.

In summarizing the court's views in Kent, Mr. Justice Fortas wrote for the court:

"The net, therefore, is that petitioner— then a boy of 16—was by statute entitled

to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." Id., 86 S.Ct. at p. 1055, 16 L.Ed.2d at p. 95.

In light of the foregoing language we think there is no room for debate on the question whether the present appellant was entitled to counsel in the juvenile court proceedings. As noted, the record demonstrates that he had none.

This was a critical stage of the litigation. Pursuant to KRS 208.020 the jurisdiction of the juvenile court is exclusive unless it be surrendered by that court. Childers v. Commonwealth, Ky., 239 S.W.2d 255. Surrendering jurisdiction was not compulsory on the part of the juvenile court.

A remaining question is whether the error in failing to provide counsel in these circumstances is one that may be reached by RCr 11.42 proceedings. The error could have been raised in the circuit court by a motion to dismiss the indictment and it could have been raised upon appeal to this court if properly preserved. In King v. Commonwealth, Ky., 387 S.W.2d 582, and many subsequent decisions following it, we have held that the post-conviction relief afforded by RCr 11.42 is not a substitute for the appeal process, and does not permit review of alleged trial errors which fall short of a denial of due process. Even certain constitutional guarantees may be waived by failure to appeal. See Collier v. Commonwealth, Ky., 387 S.W.2d 858. As noted in Collier, however, a contrary result had been reached in Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4th Cir. 1963), because at the time the petitioner had been tried in the Maryland court the substantive law of Maryland permitted the use of evidence obtained by an unconstitutional search.

The case at bar falls within the rationale of the principles just discussed. When appellant and his court appointed counsel had to deal with his situation in 1958 they were acting without benefit of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 789, 93 A.L.R.2d 733. Courts generally, including this one, had held that proceedings in juvenile courts were not substantially criminal proceedings. Kent v. United States, supra, had not been rendered. In view of these factors we may not say that appellant is foreclosed from raising this issue because he failed to avail himself of the right of appeal.

The U. S. Supreme Court recently elaborated on the tests it employs in determining retroactivity of its decisions. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, decided June 20, 1966. In Johnson the Supreme Court reiterated that the denial of counsel at a trial goes to the fundamental fairness of the proceedings, and effects a denial of due process. Based upon that reasoning it is argued that appellant was denied due process as assured by the Kentucky and United States Constitutions when he was not accorded a hearing with the advice of counsel incident to the waiver proceedings by the juvenile court.

We are of the opinion that under the circumstances in this case retroactive effect should not be given to Kent. John-

son v. State of New Jersey, supra, and Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453. "Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

If we applied Kent retroactively, the remedy authorized therein would not be helpful to appellant, Smith, who is now over 21 years of age. The opinion stated:

> "Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See Black v. United States [122 U.S.App.D.C. 393, 355 F.2d 104], supra. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In the circumstances of this case, and in light of the remedy which the Court of Appeals fashioned in Black, supra, we do not consider it appropriate to grant this drastic relief. Accordingly, we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing de novo on waiver, consistent with this opinion. If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such fur-

ther proceedings, if any, as may be warranted, to enter an appropriate judgment. Cf. Black v. United States, supra." Id., 86 S.Ct. at p. 1059, 16 L.Ed.2d at p. 99.

General standards to determine whether or not jurisdiction should be waived had been promulgated.[1] Among these were "The seriousness of the alleged offense * * *", also "Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner", and "Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons * * *". There were others including "The sophistication and maturity of the Juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living." Smith was in the United States Navy but was away without leave at the time he committed the crime. He was born on June 15, 1940, and was within seven weeks of being eighteen when the waiver occurred. Six days before his eighteenth birthday he pled guilty. The offense for which Smith was charged was using a shotgun to rob the manager of an automobile service station of $100.00. His parents were with him at the waiver proceeding. Beyond a reasonable doubt, counsel at the time of the hearing in the juvenile court could not effectively have prevented a waiver of jurisdiction; therefore, Smith was not adversely affected.

We have carefully examined the record to determine whether or not there is any merit in the claim that Smith did not have effective represenation of counsel in the criminal court. We find nothing to so indicate.

The judgment is affirmed.

All concur.

---

1. The appendix following Kent v. United States, supra, title "Policy Memorandum No. 7, Nov. 30, 1959" is a guide to assist in determining whether or not waiver is appropriate.