**STATE of Missouri, Respondent,**

v.

**Rueben Rothschild FREEDMAN, Appellant.**

No. 44743.

Supreme Court of Missouri.

Division No. 1.

Oct. 10, 1955.

No attorney for appellant.

John M. Dalton, Atty. Gen., Aubrey R. Hammett, Asst. Atty. Gen., for respondent.

DALTON, Presiding Judge.

This is an appeal from a final judgment denying relief to petitioner (appellant here) in a proceeding instituted under 42 V.A. M.S. Supreme Court Rule No. 27.26 (Rules of Criminal Procedure) to correct, vacate and set aside a judgment of conviction for forgery in the second degree (uttering a forged check) and a sentence of five years

in the state penitentiary, as entered upon a plea of guilty in the circuit court of Jackson County on November 24, 1954. See Sections 561.090 and 561.330, RSMo 1949, V.A.M.S. Appellant is now a prisoner in the custody of the warden of the Missouri State Penitentiary serving the mentioned sentence, and he prosecutes this appeal as a poor person. We review the record de novo. See Supreme Court Rules 27.26, 28.03 and 28.05.

The motion, as originally filed in the circuit court, charged (1) police brutality to obtain appellant's confession; (2) the insufficiency of evidence to prove guilt, to wit, that "at no time was the defendant's handwriting identified with the spurious checks allegedly passed by him"; (3) the failure of appellant's employed and paid counsel to give "effective legal services"; (4) the failure of the court to assess a three year penalty when appellant had "offered to plead guilty on a promise of three years," and had "plead guilty to second degree forgery, assuming that the offer of three years would stand as of November 22, 1954" (on which prior date, appellant had declined to plead and the cause had been continued); and (5) that the plea of guilty had been entered under duress, because, otherwise, appellant was to be prosecuted under the habitual criminal act.

The prosecuting attorney was duly notified of the motion. The court, at appellant's request, appointed counsel to represent appellant at the hearing on the motion. Time was given for appellant to confer with counsel and the motion was promptly heard and ruled by the court on December 7, 1954. Subsequently, the court appointed counsel to assist appellant to perfect his appeal to this court.

The transcript of the record, as made at the time the plea of guilty was entered, shows that appellant was charged with forgery in the second degree, to wit, feloniously uttering a forged check for $84.17 to Sam Flacks in Jackson County on June 22, 1954. Appellant had had a preliminary hearing in the magistrate court on this charge on July 21, 1954, and had been bound over to the circuit court. He had also waived a hearing on another and similar charge of forgery in the second degree. Informations charging offenses under Sec. 561.090, supra, had been duly filed in the circuit court. Thereafter, with reference to the first charge, the record shows that on July 27, 1954, appellant appeared in the circuit court to answer said charge, "whereupon the court informed said defendant of the nature of the charge against him, and the punishment therefor, and of his right to counsel, and explained wherein the exercise of said right might be of benefit to said defendant, and after interrogating defendant, the Court finds that defendant is mentally able and sufficiently informed to decide his need for counsel, and the Court offered to appoint counsel for defendant to conduct his defense, but defendant waived such right to counsel; whereupon, defendant is duly arraigned and enters a plea of not guilty to the charge of Forgery Second Degree, Uttering  *  *  *."

Thereafter, on November 22, 1954, appellant appeared in court with hired counsel and at his request the cases were continued. On November 24, 1954, appellant again appeared in open court with hired counsel and withdrew his plea of not guilty in the first case and entered a plea of guilty. The record shows that the court thereupon questioned appellant at length and ascertained that his true name was Rueben Freedman; that he had had an opportunity to discuss the pending charge with his attorney; that counsel appearing with him was in fact his attorney; that he had discussed the charge with the rabbi; that he had been in jail five months; that he could have had visitors if they had wanted to come; that the charge had been read to him when he was arraigned; that he fully understood what the charge was; that appellant wanted to plead guilty and throw himself upon the mercy of the court; that he was 52 years of age and had spent 30 years in prison; that he was "involved in a forgery ring" when he committed the offense charged; and that he did not know the persons with whom he dealt, except that they were from Chicago. Counsel for the state then advised the court concerning defendant's prior statements to the police con-

cerning his associates and their method of operation and as to appellant's statement that they were from Detroit, Michigan. Counsel also advised the court that there were 13 checks in defendant's file totaling around $700; and that defendant had previously "done twenty-four years." Counsel for the state further stated: "I initially was going to recommend three years, but he (appellant) thought I was an awful hard man, so I will not make any recommendation. I will leave it to the Court, because I don't want him to think I am too hard." Defendant's counsel then said: "Your Honor, I think the recommendation of three years is more than fair, and I respectfully request the Court to follow it because of the defendant's attitude, and the Court has an opportunity to see that. One of the things that can be said in his favor, one of the few things, is that he is not a man of violence * * *." Counsel later referred to appellant's victims, the merchants, as being "greedy and gullible" and as being willing to take checks from anybody. The Court then referred to appellant's record as including charges of "gross indecency and attempted sodomy"—"Investigation for rape," etc. and asked, if there was any reason the court "should not now pass sentence," to which question appellant personally answered "No, sir," and the court fixed the penalty at 5 years. The court then called attention to the second charge of the same nature pending against defendant. Counsel for the prosecution stated that the state desired to have this case disposed of and to have the penalty run concurrently with the penalty in the first case, but appellant then objected and said he had not had an opportunity to consult his attorney as to the second charge. Appellant further complained to the court of the penalty assessed in the prior case and insisted that his past should be "a closed book." The Court replied: "You are still the same man." The court refused to change the penalty and proceeded to pronounce sentence and enter final judgment.

It further appears from the transcript of the hearing on the motion that counsel appointed for appellant asked the court if appellant could be placed in a mental institution and have an operation, lobotomy, to deter him from further criminal tendencies. The request was denied. The court said: "I have had this man before me now several times and have spoken with him and had ample opportunity to observe him * * * I don't find anything to cause me to believe that he is in any way mentally insane. I am positive he knows the difference between right and wrong. If you had heard the wonderful selling argument that he gave me at the time of his sentencing about how he wanted to rehabilitate and that he now knew that he must change his ways and be honest from this time forth, you would be as certain as I am that he is at least of sufficient mentality that as a matter of law there is nothing that could be gained by that sort of thing, and I am going to overrule that oral request."

Appellant's appointed counsel then stated: "His main objection, we will call it, to his sentencing here is that he feels that he was discriminated against by the Court because he didn't accept three years at the time that the three years was suggested by the State and defense attorney, Mr. Ergovich." The Court answered: "Well, my answer to that is that I didn't discriminate against him. As a matter of fact, the Prosecuting Attorney made no recommendation and I determined his sentence by the crime that was involved, his plea of guilty, his own statement to me as to what happened, and what he thought ought to be done, plus his own admission of his past record of numerous prior convictions."

In the hearing on the motion defendant gave his name as Ray Rothschild Freedman. He testified that he was in court on November 22, 1954 and that he was granted a deferment until November 24th; that he had been arrested June 22, 1954 by the Kansas City Police Department; that he was "mistreated practically every half hour on the hour during the time that" he was in jail to extort a confession; that he had been out of prison only a month; that he had "held five jobs down in a period of about ten days"; that he had had $683,

which was taken from him and not returned; that he had employed an attorney and paid $250 to be represented; that he had an understanding with the attorney he was "to get jail time or not worse than 2 years"; that he talked to his attorney several times, but the conversations were "off the record" and of a matter not "discretionary to discuss"; that he saw his attorney on three court appearances; that he had waived a hearing on the second charge in Magistrate Court; that on November 22, 1954, his attorney said that three years was the best he could get and defendant protested that such was contrary to the agreement; that he heard the assistant prosecutor say that he (defendant) could take that or he would try him as an habitual criminal; that counsel for the state advised the court he had offered three years, but he (defendant) had balked at it; that he had entered a plea of guilty reluctantly, because he considered it duress, but felt that his record would convict him; that the court had remarked to him on the previous Monday "that he does not have to always observe the recommendation of the prosecution"; that although he understood the remark, he (defendant) "assumed that it could be less"; that the offer to recommend three years influenced him to plead guilty; that after sentence was imposed he (defendant) made no remarks to the court or to the assistant prosecutor that he could recall and made no remarks, except personally to his attorney to the effect that he had let him down and should refund part of the attorney fee because he hadn't granted effective legal assistance in view of what he had been paid; that he had heard he could withdraw his plea of guilty, if the recommendation of the prosecutor was not accepted; that he now wanted to withdraw his plea, as he didn't think he could do worse, even under the habitual criminal act; that he had four prior convictions and one for a morals offense that was set aside; that he was familiar with court proceedings and had been through trials and sentencing before; that he had acquired an education equivalent to a journalist's degree; and that he did not think the court had deliberated enough before sentencing him.

The attorney who had represented defendant testified that he was paid $250 to represent defendant; and that he had no understanding that the sentence would be jail time or not more than two years. The attorney further answered defendant as follows: "I told you the best you could ever hope to get would be the minimum, which is two years. For jail time the sentence would have to be reduced, and in view of your record of four or five felony convictions, 17 check charges against you, that was almost an impossibility."

The testimony of defendant's prior attorney further tended to show that the amount of defendant's checks did not exceed $700; that the money taken from defendant by the police was tied up as evidence; that attachments had been served by various people, who alleged that defendant had obtained the money by false pretenses and forged checks; and that defendant's handwriting on the check in the charge to which he had pleaded guilty had been established by the witness who received the check. Defendant then asked: "Well, off the record, does it seem logical to you, Mr. Ergovich, that as much experience as I have had in these courts, in and out, that I would just pay you $250 to represent me with no promise of anything? * * * Wasn't there some kind of assurance on your part that if you couldn't do anything, you couldn't get the best for me, that there would be a refund?" Counsel denied that any agreement for refund was made and further testified: "I told him it was virtually impossible for him to receive any jail time all during the trial or all during the pendency of this suit. That is why he stayed in jail five months. He refused to plead to the best I could do of three years. He wanted jail time. Finally he came down to plead because the Court had forced us to trial and Mr. Sandler was going to file the habitual criminal act, and I told him he wouldn't stand a chance at trial even if he succeeded in beating one charge, they had 17 to file. * * * I

went over the whole thing. He refused to plead to the three years, and Mr. Sandler said he would make no recommendation. I stated to him he would make no recommendation and he said, 'Good', because he thought he could do better than three years by making an appeal to the Court himself, and he wanted to know, I told him the danger, that the Court could on its own give him any sentence up to the maximum, and he said, 'What are the chances of setting that aside?' I explained the law to him, that if a compromise, as I understand it, if there had been a compromise or a settlement of a sentence and he unknowingly pleaded guilty and the compromise was breached, there is a possibility of setting it aside. But he knew, and I informed him that he was going up there, and there was no agreement as to term. He could get more than three or less than three." Counsel further said: " * * * I saw him down here once more, I saw him to tell him that they were pressing for trial and the best we could get was three years and he had better take it or the habitual criminal act would be filed."

The assistant prosecuting attorney testified that he advised defendant's counsel, when first contacted, that he had been instructed to file two cases under the habitual criminal act; and he further stated that it was his understanding defendant was going to plead guilty with a recommendation of three years, but defendant declined to plead guilty with that recommendation and he (witness) agreed with defendant's counsel to make no recommendation, as he understood there were seven prior convictions. The witness further testified that he made no threats to defendant and had no conversation with him but, when defendant declined to plead guilty, the clerk of the court was advised to have the case set for trial a sufficient time in advance so that the records could be obtained for a trial under the habitual criminal act.

After reviewing the record and hearing the above evidence the trial court made a finding, as follows: "The record shows to the satisfaction of the Court that you as petitioner are entitled to no relief; that sen-

tence was rendered with the Court having full jurisdiction; that the sentence was legally and properly imposed; that there was no denial or infringement of any Constitutional right of yours; and that the entire matter, so far as the Court can determine, did determine it properly, * * * there is no basis for in any way changing it or setting the same aside.

In what purports to be appellant's brief in this court, appellant complains that he has been illegally deprived of his liberty; that there has been a miscarriage of justice; and that the sentence is null and void. His grounds are (1) that the court assumed arbitrary power in abrogating and setting aside the recommendation of the prosecution by adding two more years to the three year term recommended; (2) that the evidence was insufficient, since the handwriting endorsed on the checks was not identified as that of appellant; (3) that defendant was not accorded "a speedy and impartial public trial"; and (4) that his plea of guilty was entered under what is tantamount to duress, since the prosecutor planned to try him under the habitual criminal act if a plea of guilty was not entered.

Supreme Court Rule 27.26 in part provides: "A prisoner in custody under sentence and claiming a right to be released on the ground that such sentence was imposed in violation of the Constitution and laws of this State or the United States, or that the court imposing such sentence was without jurisdiction to do so, or that such sentence was in excess of the maximum sentence authorized by law *or is otherwise subject to collateral attack,* may file a motion at any time in the court which imposed such sentence to vacate, set aside or correct the same. * * *" (Italics ours.) For recent cases instituted under this rule see State v. Mischanko, Mo.Sup., 272 S.W.2d 210; State v. Eaton, Mo.Sup., 280 S.W.2d 63; State v. Hurst, Mo.Sup., 280 S.W.2d 115.

It is apparent that appellant's contentions that the evidence was insufficient for the state to have secured a conviction, if

a jury trial had been had, that he had not been accorded a speedy and impartial public trial and that his hired counsel failed to give "effective legal services," have no place in this proceeding which has been instituted under Supreme Court Rule 27.26 to determine the validity of the judgment and sentence as against collateral attack. Accordingly, these contentions which are in fact without merit, must be disregarded.

■■ The contention that the court assumed arbitrary power in abrogating and setting aside the recommendation of the prosecuting attorney by adding two more years to the three year term recommended is wholly unsupported by evidence. The burden rested upon petitioner-appellant to offer substantial evidence in support of the allegations of his motion. State v. Hurst, supra, 280 S.W.2d 115, 118. The record shows that the appellant definitely refused to accept the recommendation of the assistant prosecuting attorney; that appellant had been personally advised by the court that such a recommendation, even if made, would not necessarily be accepted by the court; and that, after appellant refused the proposed recommendation, he entered his plea of guilty with the full knowledge that no recommendation as to punishment would be made. Appellant intentionally acted upon the assumption that he could obtain better results by throwing himself upon the mercy of the court and personally pleading his cause than his counsel could obtain for him by conference and agreement with the assistant prosecuting attorney. Appellant may not now complain because the results obtained were adverse and a more severe penalty was assessed. The court did not arbitrarily disregard any recommendation. The plea of guilty was not induced upon the theory that a particular recommendation would be made and approved, instead appellant refused the proposed recommendation.

Appellant's final contention is that his plea of guilty was entered under duress. The facts upon which appellant relies are not in dispute. Appellant admits that he entered the plea of guilty; and that he was "involved in a forgery ring." He discussed with the court the method of operation of his associates and how he had obtained the forged checks and uttered them. While the detailed facts connected with the uttering of the particular check were not reviewed before the court, the appellant's connection with the plan of operation was not in dispute. It further appears from the record that the state had evidence available to make the necessary proof in the particular case. The prior convictions of appellant were also admitted. The record further shows that, although there were a number of checks in the prosecuting attorney's file concerning appellant, only two charges were preferred. A preliminary hearing was had on one charge and a hearing was then waived on the other. Appellant was, therefore, familiar with the state's evidence in the particular case in which the plea of guilty was entered. Appellant, however, insists that his plea of guilty was entered under duress, because he either had to enter a plea of guilty or stand trial before the jury on the particular charge and under the habitual criminal act. Appellant was present when counsel for the state asked to have the case set for trial a sufficient time in advance so that the necessary copies of records could be obtained for a trial under the habitual criminal act.

■ While the record clearly shows that appellant was confronted with the dilemma of either entering a plea of guilty or being tried upon the charge in question before a jury, the record wholly fails to show that such alleged duress was such as would nullify the judgment and sentence entered by the court upon the plea of guilty. The compulsion under which appellant acted was neither unlawful, nor exercised for an unlawful purpose. Appellant exercised his own volition and choice with a full knowledge of the facts in entering a plea of guilty and taking his chances with the court as to punishment, rather than risking a trial of the cause before a jury.

Duress is defined in Black's Law Dictionary (3rd Ed.) as *"Unlawful constraint exercised upon a man whereby he is forced*

582

to do some act that he otherwise would not have done. It may be either 'duress or imprisonment', where the person is deprived of his liberty in order to force him to compliance, or by violence, beating, or other actual injury, or duress per minas, consisting in threats of imprisonment or great physical injury or death. Duress may also include the same injuries, threats, or restraint exercised · upon the man's wife, child, or parent." (Italics ours.) There was nothing unlawful or improper connected with the institution and prosecution of the criminal charge filed against appellant.

Nor was the constraint or compulsion exercised by the state for an unlawful purpose. The rule is well illustrated in Hensinger v. Dyer, 147 Mo. 219, 230, 48 S.W. 912, 915, where the court said: "It thus seems clear, both upon principle and authority, that a wife may avoid a contract which she has been induced to enter into by threats of a criminal prosecution of her husband. * * * While the threatened criminal prosecution of Hensinger may have been for a just cause, and under lawful authority, it was for an unlawful purpose; that is, to compel the defendants to execute the note in question, and Mrs. Hensinger to execute the deed of trust upon her land to secure its payment." The court stated the rule as follows: "That the unlawful use of criminal process, or threatened unlawful use of criminal process, is itself unlawful, and no advantage obtained by such unlawful means should be sustained by the courts." And see Coleman v. Crescent Insulated Wire & Cable Co., 350 Mo. 781, 790, 168 S.W.2d 1060.

No unlawful purpose appears from the evidence in the case before us. The alleged duress did not nullify the judgment and sentence imposed. The trial court did not err in overruling appellant's motion.

The judgment on the motion is affirmed.

All concur.