**STATE of Missouri, Respondent,**

v.

**Sterling Willis YOUNG, Appellant.**

No. 48465.

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1961.

Sterling W. Young, in pro. per.

Thomas F. Eagleton, Atty. Gen., Moody Mansur, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Sterling Willis Young, a prisoner in the penitentiary, appeals from the denial by the Circuit Court of the City of St. Louis of his motion to vacate and set aside the four separate sentences (previously imposed by said court) by virtue of which he is presently incarcerated. (Rule 27.26, V.A.M.R.) We shall refer to the prisoner-appellant as defendant.

Three of the four charges which culminated in the sentences now under attack were that of forcible rape; the other, burglary in the first degree. On January 7, 1959, defendant appeared in the trial court in person and by his privately retained counsel, Messrs. William Hirsch and Irl Baris, and, by leave, withdrew his former plea of not guilty in each of the four cases, and entered pleas of guilty. He was thereafter put on the stand by his counsel, and examined at some length, during the course of which it was developed that he not only understood the nature of the charges against him, but he also identified the localities in the City of St. Louis where, and the approximate dates during the preceding spring and summer on which he had committed the several offenses (his victims being white women, whereas he is a Negro). In the instance involving burglary, he described how he broke into the premises with part of his clothes off, i. e., pants, shoes and shirt, his story being that he was "either looking for a woman or

going to steal something." It was further developed that he understood the significance of withdrawing his pleas of not guilty, and entering pleas of guilty; that he pleaded guilty "cause I did it." He also stated that he had previously talked to the police about the matters to which he had testified, and that he recalled "signing some statements for the police." He went on to say that his counsel (both of whom were present) had talked to him on a number of occasions about the case; that they had been retained by his family to represent him; that they arranged for him to be,' and he was examined at the hospital "to see was I crazy"; that as a result of his stay at the hospital, and on the night before he left there, one of the doctors told him "he didn't recommend Fulton." Near the end of his oral examination, these questions were put to him by his own counsel, and he made these replies:

"Q. Sterling, have there been any promises made to you concerning your statement here in court today that if you told these things, that anything might happen to you, either for or against you? A. No, sir.

"Q. And it is your intention to enter this plea of guilty to these offenses that you have been charged with? A. Yes, sir.

"Q. Is that correct? And you understand that as a result of it, the Court has the power to sentence you to the penitentiary? A. Yes, sir."

At the conclusion of the examination, the court assessed defendant's punishment and accordingly entered judgments sentencing him to life imprisonment in each of the three rape cases, and to a term of ten years' imprisonment on the charge of burglary in the first degree. The four charges under which these sentences were imposed were preferred by grand jury indictments, and the single assault defendant makes upon said sentences is thus stated in his motion to vacate and set aside: "Movant submitts that each of above crimes were charged by Grand Jury indictments; and that the material evidence presented to the Grand Jury, were statements and admissions of his own guilt, of which statements and admissions were obtained by the police officers through means of *dress* duress as set forth in the following particularity to-wit:" [Here follow allegations to this effect: First, that in violation of "Amendment Six (6), and Amendment Fourteen (14), Constitution of the United States," he was "beaten, threatened, and subjected to inhuman, uncivilized treatment for over a period of four days," during which time he "was subjected to continuous interrogation without being permitted to contact a lawyer, relatives, or friends"; and, secondly, that "in violation of Amendment 5, Constitution of the United States * * * and Art. I, Sec. 19 and Sec. 21, Constitution (1945) of Missouri [V.A.M.S.]," he was taken to a hospital ostensibly "for minor psychiatric examinations," but instead was "injected intravenously with 2 cc of Sodium Amytal, alias 'Truth Serum,' and while under the influence of this drug was questioned by police officers about other crimes unrelated to the crimes for which movant was charged."]

We do not pause to further notice the second (or last) of the foregoing allegations for the simple reason that it appears on their face that the subject matter of the claimed unlawful interrogation while defendant was under the influence of "truth serum" was wholly extraneous to the charges upon which the challenged sentences were imposed, such questioning having been (as the motion expressly alleges) "about other crimes unrelated to the crimes for which movant was charged." In this connection, we take occasion to say that the instant proceeding is another example of an all-too-frequent type of afterthought attack, under Rule 27.26, upon the validity of a judgment and sentence in a criminal case (with its accompanying lagniappe by way of still another or added review on appeal, albeit, as here, vexatious), and so,

as in the ordinary run of such cases, the "pro se" typewritten brief filed here in defendant's behalf (admittedly prepared by a fellow inmate—obviously a lay person, and unlettered, too) has not been of the slightest assistance to the court, nor, in consequence, of any benefit to defendant.

We are not here concerned with the quashal or setting aside of indictments upon motion prior to trial or plea. On the contrary, the question presented is reduced to this: Assuming (as we must for present purposes) that defendant's admissions of guilt as made to the police were rendered incompetent as evidence because coerced, and hence involuntary, does the fact that such incompetent evidence was heard by the grand jury render void and subject to collateral attack the sentence imposed on a plea of guilty to the indictment returned by that grand jury to which such incompetent evidence related? We unhesitatingly give a negative answer to the question thus posed.

The facts of this case readily distinguish it from those cases decided by the Supreme Court of the United States upon which defendant relies and which either hold or recognize that the introduction in evidence and use against an accused upon his trial of a coerced or involuntary confession (whether induced by psychological pressure or by physical violence) constitutes a denial of due process of law, contrary to the Fourteenth Amendment. (Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed. 2d 246; Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 and Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481, are the cases defendant cites.) To demonstrate the distinguishing factual difference to which reference has just been made, it need only be said that in the case at bar neither defendant's own admissions of guilt, as made to the police, nor any other kind of proof was offered or used on behalf of the state in the course of the proceedings whereby defendant's pleas of not guilty were withdrawn, and in their place and stead his pleas of guilty were entered.

If, as the cases hold, it is not ground for quashing an indictment that some incompetent evidence may have been heard by the grand jury (State v. Shreve, 137 Mo. 1, 5, 38 S.W. 548; State v. Pierson, 337 Mo. 475, 85 S.W.2d 48, 50–51), then it follows that the effect (of the use of some incompetent evidence before the grand jury) upon a judgment and sentence entered and pronounced upon a wholly voluntary plea of guilty would be no more rigorous and severe than in the case of timely pre-trial challenge by motion to quash, and certainly, in any event, not the drastic one of divesting the court of jurisdiction, or otherwise rendering the judgment and sentence void and thereby subject to collateral attack.

We fail to see how the use before the grand jury of the allegedly incompetent admissions could have affected defendant's plea of guilty several months later. Had the grand jury returned the indictments in the absence of any evidence whatever, the way would have been open to defendant to impeach their validity by a timely and appropriate motion to quash. State v. Pierson, supra; State v. Grady, 84 Mo. 220, 223; State v. Shawley, 334 Mo. 352, 67 S.W.2d 74. Failing in this, the way would still have been open to prevent the use of coerced admissions—if, in fact, they were such—by appropriate objection thereto interposed when the same were offered against defendant at his trial.

The view we have taken of defendant's claims, as hereinabove expressed, make it plain that the records and files of the case show conclusively that he is entitled to no relief, hence the trial court's order overruling his motion to vacate should be, and it is, affirmed.

All concur.