Alvin C. JEFFERSON, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 53966.

Supreme Court of Missouri, Division No. 1.

June 9, 1969.

Gordon Fritz, Malden, for appellant.

Norman H. Anderson, Atty. Gen., Richard C. Ashby, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal from an order denying motions by Alvin C. Jefferson under Criminal Rules 27.25 and 27.26, V.A.M.R., to vacate a sentence and judgment of conviction and withdraw a plea of guilty.

On September 9, 1957 defendant, then aged 15 years, pleaded guilty to a reduced charge of murder in the second degree and was sentenced to 40 years' imprisonment. On November 16, 1967 defendant, an inmate of the penitentiary, filed this motion to vacate, alleging that he was "harassed, brow-beat and threatened with grave punishment until he agreed to sign a statement and/or confession"; that he was a juvenile at the time of arrest but was never taken before juvenile authorities and that his plea of guilty was not voluntary but was the product of coercion and fear. On March 25, 1968 defendant filed a motion to withdraw his plea of guilty, alleging that the plea was involuntary and was made as a result of mental coercion and for fear that his signed confession would be used against him at a jury trial, and for the other reasons stated in his motion to vacate.

A full evidentiary hearing was held on these motions. In support of the motions defendant, represented by counsel, testified personally and introduced the court records. On the day of his arrest, January 30, 1957, the magistrate court found that defendant was a juvenile, 15 years of age, and transferred and certified the case to the juvenile court. On February 11,

1957, the juvenile court ordered defendant prosecuted under the general law and the cause was remanded to the magistrate court for a preliminary examination, following which an information was filed in circuit court charging defendant with first degree murder. The circuit court appointed two lawyers to represent defendant. After conferences between defendant and his counsel defendant appeared in circuit court accompanied by his two lawyers. Defendant's counsel informed the court of an agreement with the prosecuting attorney to plead guilty to second degree murder "with a term of forty years." The judge, unwilling to be bound by any agreement, refused to accept the plea on that basis and offered to allow defendant to withdraw his plea of guilty. Defendant, interrogated by the court, stated that he understood what was going on; knew that he was pleading guilty to second degree murder and wished to do so, and at the request of the court briefly related the facts surrounding his killing of his grandmother. Defendant's counsel gave the court an extensive review of defendant's background, detailing numerous incidents in his past life, demonstrating an intimate knowledge of the case and of defendant's attitudes, mental condition, need for special handling and possibilities of rehabilitation. The prosecuting attorney recommended forty years' imprisonment and the court accepted the recommendation.

At the 27.25 and 27.26 hearing defendant testified to the following set of facts: He had a fourth grade education. Arrested at 5 P.M. on January 29, 1957 by the sheriff and a deputy, he was handcuffed and not taken to a juvenile officer but directly to the county jail. He was not advised of his constitutional rights and was denied an opportunity to talk with a lawyer or to communicate with his family. A written confession was given after long interrogation in a small room. There were threats and references to the possibility of getting the gas chamber. An officer twice struck defendant's head with his hands.

He was "scared" and confused. He signed a written confession which was a lie, because he felt he had no other choice. He talked to his court-appointed lawyers twice. They explained the situation to him and the penalties involved; told him that the confession could be used against him at the trial and recommended that he plead guilty to second degree murder. He pleaded guilty because he had "no other choice." He was afraid of the death penalty if he faced the jury and was "half scared to death." He recalled having been examined at the state hospital and acknowledged that when asked there about the charge of striking his grandmother and setting the house on fire he told them that was what happened. (The examination revealed no psychosis. It was the opinion of the superintendent of the hospital that defendant was sane.) He knew that he was pleading guilty to second degree murder. He remembered telling the court that he got a stick of wood, hit "the old lady" twice on the head and then went to a neighbor's house and told them that his grandmother's house was on fire.

Defendant's testimony was contradicted by the sheriff, two deputies, the magistrate and one of defendant's attorneys. One deputy testified that at no time did he threaten, slap or abuse defendant in any way. The deputy who participated in the arrest testified that no questions were asked defendant on the drive to the jail; that at the jail he was asked his name, age, etc. for the purpose of booking him, and that the only other question was the source of a drop of blood on his shirt; that the deputy at no time made threats against defendant or struck him and did not see or hear anyone threaten or strike him. The deputy did not recall whether defendant was advised of his right to remain silent or his right to counsel. The magistrate testified that no one threatened defendant in his presence and that defendant made no complaint to the magistrate that he had been threatened or struck. The sheriff testified that on the night of

the arrest the deputy asked defendant where he got the blood on his shirt; that the sheriff questioned defendant "just a few minutes" the following day in the presence of the jailer; that he did not threaten defendant at any time or do or offer to do any physical violence to him, and that no one else did that to his knowledge; that defendant did not at any time complain to the sheriff that he had been threatened or abused by anyone. The sheriff did not remember whether he informed defendant of his rights before questioning him, and denied telling defendant that he could be put in the gas chamber or sentenced to life imprisonment.

Attorney Elbert Ford testified that he discussed with defendant the seriousness of the charge and advised him of the only two punishments for first degree murder. Mr. Ford asked defendant whether he was promised anything to make the two confessions; whether there was duress or threats; whether anyone struck or hit him or scared him into making them. Defendant advised Mr. Ford that the sheriff and other officers had not done so, and he made no complaint to Mr. Ford that he had been physically abused, choked, beaten or slapped. Defendant referred to some boys in the jail who had told defendant "about hangings and what all he was going to get and what they were going to do to him, and that he was just scared to death, and even told him about the boogerman and the devil, and things like that, you know, and he said the reason he [made the statements was that] he was scared." It was Mr. Ford's opinion that the plea of guilty was made voluntarily and was not the product of fear; that by the time defendant entered his plea he had "gotten over his being scared"; that the boys who frightened defendant left the jail several months before defendant pleaded guilty.

At the conclusion of the hearing the circuit judge found against defendant; that the procedure complied with the then-existing law governing juveniles; that his constitutional rights were not violated; that

defendant was furnished with competent, experienced attorneys who ably represented him; that defendant "is not worthy of belief, and the Court does not believe his testimony" with respect to physical and verbal mistreatment by the officers, and found that he made his plea voluntarily. The court also observed that consideration might be given to the filing of a perjury charge against defendant.

Defendant's first point is that the court erred in overruling the motion to vacate because his plea of guilty was not voluntarily made but was the product of fear and coercion practiced by law enforcement officers in violation of constitutional due process. Defendant, counting on his age, limited education and experience, fear of capital punishment, physical and mental abuse, questioning in police custody without attorney or friend, the obtaining of the confessions, claims that he did not make a reasoned choice.

█ "The prisoner has the burden of establishing his grounds for relief by a preponderance of the evidence," Criminal Rule 27.26(f), and appellate review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Criminal Rule 27.-26(j). In Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 70, this Court, quoting with approval from United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, indicated that the test in determining whether a finding is clearly erroneous is whether the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. A review of this record does not lead to that conviction. On the contrary, our conclusion is that defendant has failed to establish physical or mental coercion or duress and that the findings of the trial court are not clearly erroneous. Whether defendant's plea was induced by physical or mental coercion or duress presented an issue of fact for the trial court, whose findings are presumptively correct and are to be sustained unless

clearly erroneous. This is not a de novo review. Crosswhite v. State, supra. There was a conflict in the testimony on the issue of coercion and duress. The circuit judge heard defendant's testimony and that of the officers who contradicted him. The trial judge had a full opportunity to judge of their credibility. He decided the credibility issue against defendant, finding him unworthy of belief, and intimating that defendant had perjured himself. We defer to the trial judge's superior opportunity to accurately appraise the veracity of the witnesses and on this review uphold the circuit court's finding that neither defendant's written confessions nor his plea of guilty was induced by physical or mental abuse by the officers.

Defendant suggests prejudice by reason of the fact that his plea of guilty was induced by the existence of the confessions. If the confessions were voluntarily made, and if the plea was voluntarily and understandably made, the existence of the confessions does not taint the plea. It has been repeatedly held that a confession provides no basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily made. Busby v. Holman, 5 Cir., 356 F.2d 75, 78; Reed v. Henderson, 6 Cir., 385 F.2d 995, 997, both cited and quoted with approval in Young v. State of Missouri, Mo.Sup., 438 S.W.2d 280 (Decided on March 10, 1969); State v. Young, Mo.Sup., 351 S.W.2d 732, 734.

That defendant charged with first degree murder, knew the alternative penalties of death or life imprisonment; knew that a jury could and feared that a jury would find him guilty and assess one of these penalties against him if he went to trial on that charge, and that these considerations impelled defendant to plead guilty to a lesser charge and take the penalty of imprisonment for a long term of years, presents no ground for upsetting a judgment of conviction otherwise voluntarily made. Whether to plead guilty to the lesser charge or take his chances at a trial of the greater charge before a jury was a choice (or dilemma) confronting defendant, but the necessity of making the choice did not constitute wrongful coercion or duress within the meaning of the law. State v. Carter, Mo.Sup., 399 S.W.2d 74, 78. As stated in State v. Freedman, Mo.Sup., 282 S.W.2d 576, 581, "Appellant exercised his own volition and choice with a full knowledge of the facts in entering a plea of guilty and taking his chances with the court as to punishment, rather than risking a trial of the cause before a jury." A person may not be heard to say that he pleaded guilty in order to save himself. It is not duress for the prosecuting attorney to agree' to reduce a capital charge to one the punishment for which is limited to imprisonment for a term of years if the defendant will plead guilty to the lesser charge. "Yet, obviously, 'fear' of the greater sentence may induce a plea. Petitioner must show that he was subjected to threats or promises of illegitimate action. * * *" Kent v. United States, 1 Cir., 272 F.2d 795, 799. Defendant has not satisfactorily made any such showing.

Defendant's next point is that the court erred in overruling the motion to vacate because the evidence showed that defendant, a minor, was not taken directly before the circuit court at the time of his arrest. At the time of the events in question, January 29, 1957, the then-existing law, RSMo 1949, § 211.350, provided as follows: "When in any such county a child under the age of seventeen years is arrested with or without warrant, such child shall, instead of being taken for trial before a magistrate, or police magistrate, or judge of any other court now or hereafter having jurisdiction of the offense charged, be taken direct before the circuit court; or if the child shall have been taken before a magistrate or a police magistrate or judge of such other court, it shall be the duty of said magistrate or police magistrate or judge to transfer the case to the circuit court, and of the officer having the child in charge to take such child before said court, and the said court shall proceed to hear the case."

It is evident from the magistrate court record that the following all occurred on January 30, 1957: An affidavit or complaint was filed in the magistrate court; a warrant issued and was executed by arresting defendant and producing him before that court; the court found that defendant was a juvenile and made an order transferring and certifying defendant and the charge to the juvenile division of the circuit court. Thus it appears that defendant was not "taken for trial" before the magistrate and that his case was transferred to the circuit court in obedience to the mandate of the statute.

Defendant makes the further point that his constitutional rights were violated because he was not granted a juvenile court hearing on the question whether he should be prosecuted under the general law and was not represented by counsel at the time the juvenile court entered its order of February 11, 1957 waiving jurisdiction. Citing Kent v. United States, 383 U.S. 541, 86 S. Ct. 1045, 16 L.Ed.2d 84, defendant argues that, because of the severity of the punishment a minor accused of murder can receive if prosecuted under the general law, due process requires that he be accorded a hearing, with counsel, before the juvenile court waives jurisdiction.

The waiver statute in effect on February 11, 1957 was RSMo 1949, § 211.520,[1] which then provided: "In the discretion of the judge of any court having jurisdiction of delinquent children under the provisions of this chapter, any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law, and any motion, petition or application, made to any court or judge having general jurisdiction of criminal causes, to transfer the case of or charge against any delinquent child to a court having jurisdiction of delinquent children under the provisions of this chapter, may be denied in the discretion of the judge, when in the judgment of the judge such child is not a proper sub-ject to be dealt with under the reformatory provisions of this chapter."

The waiver order entered by the circuit court on February 11, 1965, recites: "Now on this day, on oral motion of the prosecuting attorney, defendant is ordered prosecuted under the General Law and cause remanded to Magistrate Court for preliminary examination." There was no recital that defendant was present in court; that his parents or guardian were present, or notified; that defendant had an attorney to represent him or that he waived counsel, or that a hearing was conducted. There were no findings; no reasons given for the action taken. The only evidence relating to the waiver hearing is some inconclusive testimony given by defendant. He remembered having been taken before Circuit Judge Goodman between the 10th and 15th days of February, 1965. He recalled seeing the judge that day but he did not "know the things he said." Unquestionably defendant did not have counsel at that time. There is no record of appointment of counsel until after the information was filed in circuit court.

In Kent v. United States, supra, under a juvenile court act authorizing the juvenile court to waive jurisdiction to the district court after "full investigation," the Supreme Court of the United States held that the juvenile act did not permit a procedure "for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." 383 U.S., 1. c. 554, 86 S.Ct. 1. c. 1053. The court held that the waiver of jurisdiction "is a 'critically important' action determining vitally important statutory rights of the juvenile," 383 U.S., 1. c. 556, 86 S.Ct. 1. c. 1055; that it "is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor," 383 U.S., 1. c. 561, 86 S.Ct. 1. c. 1057 setting forth the basis of the order sufficiently to permit meaningful re-

1. Repealed Laws 1957, p. 642 (now § 211.071, RSMo 1959).

view; that an opportunity for a hearing must be given the child, which hearing "must measure up to the essentials of due process and fair treatment," 383 U.S., l. c. 562, 86 S.Ct. l. c. 1057; that under Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104, the child is entitled to counsel in connection with a waiver proceeding, and that the right to representation is not a mere formality or grudging gesture to a ritualistic requirement but is of the essence of justice.

In Black v. United States, supra, the juvenile court waived jurisdiction, defendant was tried in district court and convicted. The court of appeals reversed the conviction on the ground that defendant was not represented by counsel at the waiver proceeding in juvenile court, and because that court failed to conduct a "full investigation" of the question of waiver, as required by the juvenile code.

In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, involved questions of due process in connection with an adjudication of delinquency in the juvenile court and not the propriety of waiver proceedings, but therein the United States Supreme Court reiterated the views expressed in Kent, using language indicative of an intention to elevate to the status of constitutional protection the right to a hearing on waiver of jurisdiction, the right to representation at such hearing and the right to a statement of the court's reasons for waiving jurisdiction.

■ These lately decided federal decisions are not applicable to Jefferson's case.

We reach this conclusion, not on the basis that they are not to be given retrospective effect,[2] but on the basis of waiver. The Kent, Black and Gault cases are to be distinguished on the ground that the defendants in those cases did not waive the defects in the juvenile court proceedings, whereas Jefferson did. Kent and Black were not convicted on voluntary pleas of guilty. Nor was Gault adjudged delinquent by confession. In Kent and Black the issue of guilt or innocence was tried; in Gault the issue was delinquency vel non; in all three cases defendant unsuccessfully protested and objected to the regularity of the proceedings in the juvenile court, and in none of them did he submit to or acquiesce in or in any way waive the deficiencies in the juvenile proceedings. Not so in the case of Jefferson. He waived any objections he might otherwise have had to the proceedings in the juvenile court when, after the appointment of two competent lawyers and the benefit of their advice and counsel, he failed to file a motion in the general criminal division requesting dismissal of the information, or remand to the juvenile division for the conduct of a proper hearing with counsel present and the entry of an order complying with constitutional standards. Neller v. State (1968) 79 N.M. 528, 445 P.2d 949 [2, 7]; Smith v. Commonwealth (1967) Ky.App., 412 S.W. 2d 256, 260, cert. den. 389 U.S. 873, 88 S. Ct. 162, 19 L.Ed.2d 155; In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P.2d 615, 618.

A further and all-inclusive waiver occurred when at arraignment on the criminal

2. We express no opinion on the question whether Kent, Black and Gault should be given retrospective effect. We note, however, that in several jurisdictions it has been held that to apply these new concepts and rules under similar circumstances would tend to disrupt the orderly administration of justice by upsetting settled cases and disturbing old judgments. Workman v. Commonwealth, (1968) Ky.App., 429 S.W.2d 374 [2]; Smith v. Commonwealth, (1967) Ky.App., 412 S.W.2d 256, cert. den. 389 U.S.

873, 88 S.Ct. 162, 19 L.Ed.2d 155; State v. Hance, (1967) 2 Md.App. 162, 233 A. 2d 326 [1, 2]; United States v. Wilkerson, (D.D.C.1967) 262 F.Supp. 596, cert. den. 390 U.S. 1045, 88 S.Ct. 1641, 20 L.Ed.2d 308; In re Harris, (1967) 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P. 2d 615; Cradle v. Peyton, (1967) 208 Va. 243, 156 S.E.2d 874, cert. den. 392 U.S. 945, 88 S.Ct. 2296, 20 L.Ed.2d 1407; Mordecai v. United States (D.D.C.1966) 252 F.Supp. 694.

charge, with the advice of competent counsel, defendant made no objection to the regularity and propriety of the proceedings in the juvenile court and instead voluntarily entered a plea of guilty. Neller v. State, supra; Salazar v. Rodriguez (1967) 10 Cir., 371 F.2d 726. On principle, and under the persuasion of these authorities, a comparable situation is presented when a defendant in a criminal case who has not been accorded a preliminary examination appears with his counsel on arraignment and enters a voluntary plea of guilty without objecting to the lack of a preliminary examination. Under Missouri practice this constitutes a waiver of the requirement of a preliminary hearing. State v. Maloney, Mo.Sup., 434 S.W.2d 487 [12]; State v. Testerman, Mo.Sup., 408 S.W.2d 90; State v. Keeble, Mo.Sup., 399 S.W.2d 118; State v. Cooper, Mo.Sup., 344 S.W.2d 72, cert. den. 368 U.S. 855, 82 S.Ct. 91, 7 L.Ed.2d 52.

The procedural defects and possible constitutional infirmities in the juvenile court proceedings having been waived, and the plea of guilty having been voluntarily made, the order of the trial court was not "clearly erroneous" but rather was proper in all respects.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., and STORCKMAN, J., concur; SEILER, J., concurs in result in separate opinion filed.

1. As I understand it, these defects "waived" were failure to hold a hearing, failure to provide counsel, failure to notify his parents or guardian, failure to make any findings, and, apparently, failure even to have the defendant present in court.

2. See, Weinstein, Juvenile Courts, 1957 Wash.U.L.Q. 17; Rappeport, Determina-

SEILER, Judge (concurring in result).

It does not seem to me, respectfully, that the majority opinion is on sound ground when it holds Jefferson waived the defects in the juvenile court proceedings by the failure of his lawyers in circuit court at arraignment or before entry of the guilty plea to object to these defects or to move for a remand to juvenile court for conduct of a proper hearing with counsel present and the entry of an order complying with constitutional standards.[1] I do not see how the juvenile or his lawyers can be said to have waived rights they did not know existed. I say this because back in 1957, when all this took place, few Missouri circuit judges and lawyers, if any, would have considered the defendant had any rights in juvenile court to insist upon the protections and proceedings which the majority opinion holds were "waived". I think the general attitude of the bar at that time was that where the juvenile judge was considering a transfer, there was nothing a lawyer could do until the transfer question was decided and then, if transferred for trial as an adult, the lawyer would enter the case. Lawyers considered transfer as a summary decision by the juvenile judge which was not open to challenge if the child was over the minimum age and there was evidence of a felony.

As is well known, Missouri enacted a new juvenile code, which became effective later in 1957. There was a good deal written around that time by Missouri juvenile judges and others about the old juvenile code (under which Jefferson was transferred) and the proposed new juvenile code. Additional articles have been written from time to time as to how the new code has been working.[2] There is a complete ab-

tion of Delinquency, 1958 Wash.U.L.Q. 123; Role of the Lawyer in Juvenile Courts, McMullan, 18 J. of Mo. Bar 512; Representing Juvenile Defendant in Waiver Proceedings, Merz, 12 St. Louis U.L.J. 424; Weinstein, Juvenile Court Survey, 1957–59, 1959 Wash.U.L.Q. 372.

**14**

sence in these discussions and articles about there being any such rights in the juvenile under the old code as the court holds were waived. This is easily understandable, because this court had several times held that the constitutional guarantees respecting defendants in criminal cases did not apply to juvenile proceedings, State ex rel. Matacia v. Buckner (banc) 300 Mo. 359, 254 S.W. 179; Ex parte Naccarat (banc) 328 Mo. 722, 41 S.W.2d 176; State ex rel. Shartel v. Trimble, 333 Mo. 888, 63 S.W.2d 37. The fact is that not until Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, in 1966, and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, in 1967, were these rights which the court holds were waived, firmly established. It would have taken an extraordinary degree of prescience for Jefferson's counsel in 1957 to have foreseen the Kent and Gault decisions, to say nothing of a 15-year-old juvenile with a fourth grade education.

To be a valid waiver in any field of the law there must be a voluntary, intentional relinquishment of a known existing right. Neither counsel nor defendant made any such waiver, because defendant's rights here involved had not yet been announced and were not known when this waiver in 1957 is supposed to have occurred. The point can be seen another way by asking whether defendant could sucessfully maintain that because his lawyers failed to file motions in the criminal case attacking the lack of a hearing and counsel in juvenile court, they were incompetent because they failed to raise these important questions and therefore he was denied effective assistance of counsel. The answer would be no, for the reason stated that it was not known to lawyers in Missouri in 1957 that defendant had any grounds for complaint in these respects about the juvenile court proceedings, either in juvenile court or in the general criminal division.

However, I see no way to remedy the situation. What Jefferson lost by his fail-

ure to have a hearing and representation by counsel in juvenile court was the chance to have relevant facts placed before the juvenile court by counsel at a hearing, to the end that the juvenile court might be persuaded that the parens patriae plan of procedure, with the wide range of possibilities open to the juvenile court, was the proper procedure in his case rather than a transfer to the general criminal court for trial as an adult.[3] There is no way to undo this damage now. Jefferson is 27 years of age and the juvenile court would no longer have jurisdiction. This leaves only the question of whether the confession and guilty plea were voluntary and as the majority opinion says, we cannot on the record before us say the trial court's findings in this regard are clearly erroneous. Therefore, I concur in the result reached.

---

3. The many options open to the juvenile court were set forth in Sec. 211.390, RSMo 1949.