In the interest of Hank Charles **CARTER**, a child under 17 years of age: **Billy Joe Carter and Fannie Ruth Carter**, parents of Hank Charles Carter, a minor child and in the interest of said minor child, Appellants,

v.

**William J. MURPHY, Juvenile Officer of the Juvenile Court of the City of St. Louis, Respondent.**

**Nos. 33730, 33731.**

St. Louis Court of Appeals, Missouri.

March 23, 1971.

Maniscalco, Clancy Pittman & Bagot, Richard P. Moore, Clayton, for appellants.

Ellen Hanson, Robert W. Van Dillen, City Counselor, John J. FitzGibbon, Associate City Counselor, St. Louis, for respondent.

WOLFE, Judge.

This is an appeal from an order of the Juvenile Court of the City of St. Louis holding that Hank Charles Carter is not a proper subject to be dealt with under the provisions of the Juvenile Code, §§ 211.011 to 211.431, RSMo, V.A.M.S., and ordering the cause transferred to the Circuit Court for prosecution under the general law.

On April 9, 1969, the acting Juvenile Officer of the Juvenile Court filed a petition which charged that Hank Charles Carter on January 28, 1969, willfully killed John Maness by shooting him with a revolver and wounded Samuel Maness by the same means. The petition concluded with the following:

> "Said child cannot receive in his own home, such care, guidance and control as will conduce to the welfare of said child, and the best interests of the State as required by Sections 211.010, through 211.-420 of the Revised Statutes of Missouri, 1957 Supplement.

> "WHEREFORE, the Juvenile Officer prays that:

> "The Court inquire into the matter and make such orders, judgments and decree as are in the premises required."

On March 4, 1969, the counsel for Carter filed a motion requesting the court to order a psychiatric examination and psychological evaluation of the defendant. The motion was sustained and the court entered an order appointing Malcolm Bliss Mental Health Center to conduct a psychological examination of Carter "for the purpose of providing the court with a written report regarding said child's psychological functioning and condition in order that these factors might be considered in the disposition of this matter."

On April 9, 1969, the hearing before the Juvenile Court began. Counsel for the Juvenile Officer asked leave to amend the petition to bring the charge of the offense committed under the statutory definition of murder. This was denied upon objection of counsel for Hank Carter and the hearing proceeded. The following are the facts brought forth at that hearing.

Samuel Maness, a boy in the eighth grade of school, and his brother John, a high school student, were walking from their home on Vandeventer Avenue in the City of St. Louis, to a drugstore located at Manchester and Boyle Avenues. It was about 4:30 in the afternoon of January 28, and they were on an errand to get medicine for another brother who was ill at home. The drugstore was about three blocks from their home.

While they were walking on Boyle near and toward Manchester, Hank Charles Carter with an older boy called Duke came across Manchester from a tavern and approached the two brothers on Boyle Avenue. Duke asked Samuel if he wanted to fight and told him not to be "messing" with his girl. Samuel said, "I don't even know your girl and I have hardly ever seen her." At that point Hank Carter said to Samuel's brother, John, "Well, as long as we are standing here, we might as well fight it out, too." Hank Carter was smoking a cigarette which he pushed into John's face. Carter then stepped back and shot John. John fell and Carter shot him again. Samuel leaned over his brother and his brother said, "Run." Samuel dashed across Manchester for help with Duke and Hank Carter pursuing him. Carter shot him in the back. Samuel managed to find sanctuary in a store and the proprietor called the police. John was dead when the police arrived and Samuel was taken to a hospital and treated for the wound in his back.

Carter was arrested that same evening and when the police asked his mother if she knew where the gun was, upon the urging of some relatives present, she got the gun from under the mattress of a bed and gave it to the officer. She stated that the gun belonged to her and her husband. Ballistic tests showed it to be the gun that killed John Maness. The mother, who was called as a witness by the counsel for Hank Carter, testified that Hank had been frequently suspended from school.

At the close of her testimony, counsel for Carter stated that he would like to call as a witness Dr. Stern, a psychologist who had made a report on Carter. Counsel stated that he desired to interrogate him as to his report and as to his qualifications. The court then stated that counsel for Carter could subpoena the doctor and that he would be heard. The court further directed its Deputy Juvenile Officer to complete his social investigation and passed the case to September 15 to be reset then for further hearing. On September 15 the case was passed and reset on November 19.

On October 29 the Juvenile Officer filed a petition that brought the offense for which Carter was being held under the statutory definition of murder. On November 12 the following entry was made by the Juvenile Judge:

"The Court, after being duly informed that Hank Carter was transferred to the Circuit Court of St. Louis County to be processed as an adult, hereby orders and sets aside and holds for naught the hearing held in the case of Hank Carter Cause No. 82431, September 8, 1969, and grant leave to the Deputy Juvenile Officer, to file a petition under Sec. 211.071 for a hearing to determine if the said Juvenile is a fit subject to be dealt with under Chapter 211.011 to 211.431."

On November 19 the Deputy Juvenile Officer testified that the first "referral" that was received on Hank Carter was on January 28, 1969, the time of the killing. He was held for about a week and released

to the custody of his parents. Hank went with his parents on a visit to Dunklin County, Missouri, in March. Thereafter the Juvenile Court received a request from the sheriff of Dunklin County for the arrest of Hank who, with his father, had been charged with beating and kicking a man about the head. Hank was turned over to the sheriff of Dunklin County on March 30, 1969. He was released back to the juvenile authorities of St. Louis on April 4, and held until April 28 when he was again released to his parents.

The Juvenile Officer stated that on August 16 there was a "referral" by St. Louis County for assault and robbery committed by Hank with Duke DuBoise, the same party who was with him when he shot the Maness boys. On September 15 Hank was again arrested in St. Louis County for assaulting a police officer and in that affray Hank had flourished a pistol his father had recently purchased. The County Juvenile Court certified him for trial to the Circuit Court of the County under the general law for one of the offenses.

Counsel for the juvenile called Hank's father as a witness and he testified that both he and Hank were under charges in Dunklin County and St. Louis County and he sought to excuse their conduct as it related to both charges.

The Judge made the following finding at the conclusion of the hearing:

"Hank Charles Carter is now a youth of fifteen years of age. His pattern of living consists of a number of violations of the law.

"The two charges in the petition were committed with a weapon in an aggressive manner, and caused the death of one boy, and seriously wounded the other. The Court finds that the offenses alleged to have been committed were so serious as to threaten the safety and protection of the community.

"The Court finds that Hank Charles Carter is not a proper and fit subject to

be handled within Sections 211.011 to 211.431 R.S.Mo.1957 for the reasons that Hank Charles Carter is a large, sophisticated young man; that most of his encounters with the law seem to be in company with his father; that Hank has not been able to establish any relationship with the school, e. g., in the Adams Elementary School he had been suspended because of restlessness, inattention, refusal to do work, slipping out of his seat and out of school, smoking, fighting with children, poor attendance, wandering the streets. Often he was transferred to another elementary school; he was again suspended for beating up a smaller boy; cannot follow school rules, disruptive in classroom, i. e., hits, shoves and trips other children. Later, in high school he was suspended for non-attendance and refusal to work; that his referrals are all of an aggressive, assaultive nature threatening not only various individuals, but also the public peace; that Hank Charles Carter is in need of strict, long term, stern controls and structure, in excess of resources available under the Juvenile Code of the State of Missouri."

Upon the finding so made the cause was dismissed and certified to the Circuit Court for Criminal Causes to the end that Hank Carter be prosecuted under the general law.

Hank Carter was at all times represented by counsel. At the hearing on November 19 counsel objected to the hearing on the theory that his client was denied due process of law in that he was placed in double jeopardy. His contention is that the first part of the hearing was limited to a trial as a juvenile and the second went further into the question of whether or not the subject should be tried under the general criminal law. Since the court reached the finding and conclusion that Hank Carter should be so tried, it is contended here that he is placed in double jeopardy and this court should remand the cause to the Juvenile Court for adjudication and final disposition.

On this question of double jeopardy we are cited to Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435. That case simply held that one tried in a municipal court could not again be tried in a state court for the identical offense. In such a situation the separate sovereignty theory did not apply. We are further cited to Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. There the court stated at l.c. 446, 90 S.Ct. at 1195:

"The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again."

It concluded that to do so would constitute double jeopardy.

We do not find these cases in point for we are not here dealing with an adversary criminal trial but with a trial on a petition of the Juvenile Court for an inquiry into the conduct of Hank Carter as required by § 211.011 through § 211.431, RSMo 1959, V.A.M.S. Section 211.011 sets forth the purpose of the law, which is:

"The purpose of sections 211.011 to 211.431 is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court. * * *."

Embraced within the sections mentioned in the petition is § 211.071 which provides:

"In the discretion of the judge of the juvenile court, when any petition under sections 211.011 to 211.431 alleges that a child of the age of fourteen years or older has committed an offense which would be a felony if committed by an adult, * * * the petition may be dismissed and such child or minor may be

prosecuted under the general law, whenever the judge after receiving the report of the investigation required by sections 211.011 to 211.431 and hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of sections 211.011 to 211.431."

In support of the contention that the appellant was placed in double jeopardy by the second hearing on the case, we are cited to Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L. Ed.2d 84; Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325; and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. None of these cases deal with a question of double jeopardy. *Gault* deals with a right of a juvenile to assistance of counsel, a full and fair hearing coupled with the privilege against self-incrimination. *Kent* is focused upon the failure of the trial court to conduct a hearing on the waiver of Juvenile Court jurisdiction. *Gallegos* deals with the improper use of the confession, and *Winship* treats of the quantum of proof required.

This court, In re in Interest of T———G———, Mo.App., 455 S.W.2d 3, while dealing with a right of appeal from a juvenile court, dealt at some length on juvenile procedures. In Jefferson v. State, Mo., 442 S.W.2d 6, the Missouri Supreme Court discusses and analyzes *Kent* and *Gault* and their impact on juvenile procedure. We will not therefore restate that which has been well stated before. It should be noted, however, that in Kent v. United States, supra, 383 U.S. l.c. 562, 86 S.Ct. at 1057, the United States Supreme Court stated:

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."

It was also stated in *Gault*, supra, 387 U.S. 1, 87 S.Ct. l.c. 1443, that the court was not

ruling upon " * * * the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child."

Counsel reaches his contention that his client is in double jeopardy on the theory that the two hearings constituted separate trials. The error of the conclusion rests upon an error in the premise. There was but one proceeding before the court which presented two questions. First, the court was required to determine the status of Carter and second, whether or not Carter should be dealt with as a juvenile or certified for trial under the general law. It may be, perhaps, that the hearings were somewhat lacking in orderly procedure but they were long hearings and thorough. The child was accorded every aid provided by law to adult offenders and the judgment reached was unquestionably correct.

Judgment is affirmed.

BRADY, P. J., and DOWD, J., concur.